**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| **JACOB W. OWENS,** | § | |
| | § | |
| **Plaintiff,** | § | **CIVIL ACTION NO.** |
| | § | **4:20-cv-551** |
| **v.** | § | |
| | § | |
| **COOK CHILDREN'S MEDICAL** | § | |
| **CENTER,** | § | |
| | § | |
| | § | |
| **Defendant.** | § | |

## INDEX OF STATE COURT FILINGS

A-1     State Court Docket Sheet (5/26/20)

A-2     Plaintiff's Original Petition and Request for Discovery (3/27/20)

A-3     Letter to Clerk requesting issuance of citation (4/22/20)

A-4     Defendant's General Denial and Affirmative Defenses (5/26/20)



EXHIBIT
**A**

https://research.txcourts.gov/CourtRecordsSearch/ViewCasePrint/2764ff94bce158d1a4672dc7b4d373c0

Case Information

## JACOB W OWENS VS. THE COOK CHILDREN'S MEDICAL CENTER

141-316185-20

| Location | Case Category | Case Type | Case Filed Date |
|---|---|---|---|
| Tarrant Count - District Clerk | Civil - Other Civil | Other Civil | 3/27/2020 |

## Parties [2]

| Type | Name | Attorneys |
|---|---|---|
| Plaintiff | JACOB W OWENS | JOSEPH SHOUSE |
| Defendant | THE COOK CHILDREN'S MEDICAL CENTER | Russell Cawyer |

## Filings [3]

| Date | Filing Type | Description | Documents |
|---|---|---|---|
| 3/27/2020 | Petition | Petition | P's Original Petition v.1.pdf |
| 4/22/2020 | No Fee Documents | No Fee Documents | Cover Letter to Clerk Requesting Citations.pdf |
| 5/26/2020 | Answer/Response | Defendant's General Denial and Affirmative Defenses | 2020.05.26 Defendant's General Denial and Affirmative Defenses.pdf |

© 2020 Tyler Technologies, Inc. | All Rights Reserved
Version: 2020.0.1.3085





EXHIBIT

A-1

FILED
TARRANT COUNTY
3/27/2020 9:15 PM
THOMAS A. WILDER
DISTRICT CLERK

NOTICE:  THIS DOCUMENT CONTAINS SENSITIVE DATA.

NO. _____

| | | |
|---|---|---|
| **JACOB W. OWENS** | § | **IN THE DISTRICT COURT** |
| **Plaintiff,** | § | |
| | § | |
| **V.** | § | _____ **JUDICIAL DISTRICT** |
| | § | |
| **COOK CHILDREN′S MEDICAL** | § | |
| **CENTER** | § | |
| **Defendant.** | § | **OF TARRANT COUNTY, TEXAS** |

### PLAINTIFF'S ORIGINAL PETITION AND REQUEST FOR DISCOVERY

**TO THE HONORABLE JUDGE OF SAID COURT:**

**NOW COMES** Jacob W. Owens, hereinafter called Plaintiff, complaining of and about Cook Children's Medical Center, hereinafter called Defendant, and for cause of action shows unto the Court the following:

### DISCOVERY CONTROL PLAN LEVEL

1.      Plaintiff intends that discovery be conducted under Discovery Level 2.

### PARTIES AND SERVICE

2.      Plaintiff, Jacob W. Owens, is an Individual whose address is 3228 Oakdale Drive, Hurst, Texas 76054.

3.      The last three numbers of Jacob W. Owens's driver's license number are 930 Jacob W. Owens has not been issued a social security number.

4.      Defendant Cook Children's Medical Center, a Texas domestic nonprofit corporation, may be served with process by serving its registered agent of said domestic nonprofit corporation, Rick Merrill, at 801 Seventh Avenue, Fort Worth, Texas 76104.  Service of said Defendant as described above can be effected by certified mail.

### JURISDICTION AND VENUE



5.      The subject matter in controversy is within the jurisdictional limits of this court.

6.      Plaintiff seeks:

   a.      monetary relief over $1,000,000.

7.      This court has jurisdiction over the parties because Defendant has its principal place of business in Tarrant County.

8.      Venue in Tarrant County is proper in this cause under Section 15.002(a)(1) of the Texas Civil Practice and Remedies Code because all or a substantial part of the events or omissions giving rise to this lawsuit occurred in this county.

## NATURE OF ACTION

9.      This is an action under Title 42 U.S.C. Section 12101 et. seq. to correct unlawful employment practices on the basis of disability.

## CONDITIONS PRECEDENT

10.      All conditions precedent to jurisdiction have occurred or been complied with:  a charge of discrimination was filed with the Equal Employment Opportunity Commission within three-hundred days of the acts complained of herein and Plaintiff's Complaint is filed within ninety days of Plaintiff's receipt of the Equal Employment Opportunity Commission's issuance of a right to sue letter.

## FACTS

11.      January of 2019, Defendant, Cook Children's Medical Center ("CCMC"), hired Plaintiff, Jacob W. Owens ("Owens") to work as a registered nurse for its pediatric intensive care unit ("PICU).

12.      As a new hire in the PICU, Plaintiff went through an orientation period where his work was overseen by other nurses, known as preceptors, who would determine if Plaintiff was

competent as a nurse by observing him perform specific tasks or demonstrating sufficient medical knowledge.

13.    The preceptors would initial Plaintiff's orientation documentation when he performed the requisite task, skill or knowledge.

14.    Plaintiff kept all of his orientation documentation in a single folder in order to be easily accessible to him and his preceptors.

15.    Plaintiff needed all of the required tasks, skills and knowledge to be initialed by a preceptor in order to complete his orientation period.

16.    Marissa Topher, one of Plaintiff's preceptors, observed Plaintiff perform or demonstrate sufficient skills and knowledge of several orientation requirements, but refused to provide her initials next to the corresponding skills and knowledge.

17.    In fact, Ms. Topher kept Plaintiff's orientation for three weeks and would not return it to him despite his multiple requests for its return.

18.    Eventually, Ms. Topher returned the orientation folder and Plaintiff was able to complete his orientation in order to provide nursing care without any further training from a preceptor.

19.    Mr. Owens was diagnosed with scoliosis as a child and continues to have back issues as an adult.

20.    On July 18, 2019, Mr. Owens was admitted to a hospital for a back injury consisting of torn lumbar muscles and torn ligaments/ligament damage to his lower back.  Upon his release from the hospital, he was under strict doctor's orders to continue resting in bed until July 22, 2019.

21.    Mr. Owens informed his direct manager, Ms. Jessica Turk, on July 19th about his

back injury and his inability to fulfill his scheduled work shifts.

22.     Despite having a medical condition that is protected under the ADA, Ms. Turks threatened to terminate Mr. Owens if he missed another work shift and provided him with a written reprimand for "unscheduled absences".

23.     When Mr. Owens asked for leave under the Family Medical Leave Act ("FMLA") or a Leave of Absence ("LOA") covered by insurance to account for his missed shifts and possible missed shifts in the future, Ms. Turk informed him that he was ineligible for both FMLA and LOA.

24.     Mr. Owens was not eligible for FMLA, but Ms. Turks wrongfully informed Mr. Owens that he was ineligible for a LOA, when in fact, he was eligible and should have been afforded those benefits by CCMC.

25.     For fear of losing his job, Mr. Owens returned to work even though he was in a great deal of pain and was not physically fit to perform all of his nursing duties.

26.     Plaintiff worked for weeks in a great deal of pain due to Ms. Turk's threat of termination.

27.     Moreover, Mr. Owens specifically requested to be assigned work that accommodated his disability, but Ms. Turk refused his request and insisted he perform his regular nursing duties upon his return to work.

28.     Ms. Turk failed to properly assess Mr. Owens' injuries by refusing to review his medical documentation and for failing to have Occupational Health assess his ability to perform his job duties prior to him returning to work.  Ms. Turk's reasoning for ignoring Mr. Owens' medical documentation and not sending him to Occupational Health for evaluation was because his "unexcused absences" deemed any review unnecessary.

29.     Additionally, Ms. Turks admonished Mr. Owens for mumbling to patients and coworkers.

30.     Mr. Owens explained to Ms. Turks that he underwent jaw surgery that affected the tissue in his mouth and under his tongue, which at times impedes his ability to speak and enunciate words in a normal fashion.

31.     Even though Mr. Owens' physical disability was evident, Ms. Turks failed to provide any reasonable accommodations for his disability that would have enabled him to do his job despite his disability.

32.     Mr. Owens has suffered from depression for nearly two decades and made CCMC aware of his condition by disclosing the prescription medications he takes to manage it.  Despite CCMC's knowledge of Mr. Owens' depression, CCM failed to recognize his depression required protection under the ADA.

33.     CCMC failed to provide reasonable accommodations for Mr. Owens' protected disability of depression.

34.     Mr. Owens has never come to work at CCMC or any other place of employment impaired by any substance.

35.     Ms. Turks wrongly took corrective action by falsely claiming Plaintiff was working in an impaired state.

36.     On or about May 31, 2019, CCMC falsely accused Plaintiff of diverting a narcotic from a patient for personal use.

37.     The on-duty Administrative Supervisor accused Mr. Owens of acting erratically, which lead to his suspicion of substance abuse.

38.     When Mr. Owens asked the Administrative Supervisor to explain what was erratic

about his behavior, he stated, "I don't know."

39.     Mr. Owens voluntarily provided samples for drug testing prior to leaving the hospital.

40.     Mr. Owens was place on unpaid administrative leave pending the results of the drug test.

41.     The drug test came back negative for any illegal drugs in his system.

42.     CCMC wrongfully continued Mr. Owens' suspension despite a negative drug test by demanding to see the quantitative drug test results before determining his eligibility to return to work.

43.     Eventually, CCMC allowed Mr. Owens to return to work without reviewing the quantitative results but did not provide any explanation as to why they were no longer needed to determine his work eligibility.

44.     CCMC failed to pay Mr. Owens for the time he missed during his suspension despite the negative result of the drug test.  Section D(4)(e)(4) of the Management Guidelines in Policy Number 720 states, "If the test results are confirmed negative, the employee will be paid for any time missed due to the suspension."  Mr. Owens' drug test was negative, but CCMC has failed to pay him for the days he was suspended.

45.     Ms. Turk and other CCMC management failed to administer corrective action in a fair and consistent manner amongst the PICU nurses. For example, corrective action was applied to Mr. Owens for his alleged violation of PS 043, but other nurses are known to intentionally violate PS 043 with impunity.

46.     During a corrective action meeting, Mr. Owens notified Ms. Turks and the PICU Director that he had witnessed on numerous occasions other PICU nurses violating PS 043 by

removing controlled substances from the Omnicell,  administering the medication to the patient, and not have a second nurse verify and sign-off the administration until hours later.  Typically, in those situations, the second nurse did not witness the administration of the medication.

47.     To Mr. Owens surprise, Ms. Turks was well aware of these actions by certain PICU nurses.  Even more surprising to Mr. Owens, was Ms. Turks' flippant attitude towards enforcing these violations by stating there are cliques amongst the PICU nurses and "it happens".

48.     Ms. Turks wrongly took corrective action against Plaintiff due to him obtaining an ordered blood sample from a patient by venipuncture.  CCMC's policy does not restrict a PICU nurse from obtaining blood samples via venipuncture.  Plaintiff was never informed orally or in writing prior to this incident that PICU nurses were not allowed to obtain blood samples via venipuncture.

49.     Ms. Turk wrongfully took corrective action against Mr. Owens regarding his administration and documentation of two boluses of Fentanyl because his actions were within the guidelines of PS 589 and PS 043.  The Fentanyl solution in question was obtained and connected to the guardrail activated infusion pump by the nurse from the previous shift.  The attending physician, Dr. Javier Galvez, verbally instructed Mr. Owens to administer the two boluses of Fentanyl because the patient was decompensating and required immediate treatment.  Prior to administering the Fentanyl, Mr. Owens read the dosage back to Dr. Galvez.  Dr. Galvez confirmed the medication and dosage were correct, at which time, Mr. Owens administered the narcotic to the patient.   Due to the exigent circumstances, Mr. Owens documented the administration of the Fentanyl by hand on a piece of paper.  He would have entered this handwritten documentation into the Controlled Substance and Waste Record, but he was falsely accused of diverting the Fentanyl and escorted away by security before he had the opportunity to

do so.

50.     The two-personnel verification process for high-risk medications under Section A(6)(b) of PS 589 was fulfilled in this situation because Dr. Galvez and Mr. Owens were the two authorized personnel in the room and they followed the verification process prior to administering the medication.  Mr. Owens mistakenly believed he needed a second nurse to sign off on the administration of the medication, however, it was not necessary per PS 589.  Ms. Turks also mistakenly believed that a second nurse needed to sign off on the administration of the medication, but she should have been more well versed in CCMC's policies to avoid making that mistake before wrongfully punishing Mr. Owens.

51.     Ms. Turks and other management failed to provide Mr. Owens with all of the policies or access to all of the policies that affected him after his termination.  Specifically, Mr. Owens was not provided HR 105 regarding the alternative dispute resolution process for administrative review findings and HR 110 regarding job attendance.  Mr. Owens was not able to obtain these policies because management terminated his ability to access Lawson's Employee Self Service portal through the CookNet intranet after his termination.  For this reason, Mr. Owens believes those policies and others may provide evidence of additional claims or defenses to the improper disciplinary actions taken against him that lead to his eventual termination.

52.     CCMC failed to provide Mr. Owens a harassment-free work environment.  Mr. Owens was harassed in multiple ways, including, but not limited to: (1) negative comments from coworkers; (2) preceptor refusing to sign off on completed orientation tasks (preceptor kept Mr. Owens' orientation folder for three weeks and she would not respond to his multiple requests to return the folder.); (3) Ms. Turks called several impromptu meetings with Mr. Owens outside of scheduled shifts with little or no advanced notice (Mr. Owens often scrambled to arrange

childcare or was unable to accommodate the last-minute meeting times because of his family obligations.  Ms. Turks showed no respect for Mr. Owens' personal time by scheduling these meetings outside his scheduled shifts without a reasonable amount of advanced notice.  To make matters worse, she berated and chastised Mr. Owens for his inability to jump at her command.  Furthermore, Mr. Owens' request for a neutral third-party to be present at these meetings and corrective action meetings was repeatedly denied by Ms. Turks.); (4) Ms. Turks placed blame on Mr. Owens for other employees' mistakes, despite the fact that Mr. Owens corrected those mistakes for them; and (5) Ms. Turks criticized Mr. Owens for being emotionless when he was simply performing his job with a calm, neutral, and professional demeanor.

53.     On or about September 20, 2019, Plaintiff was placed on administrative leave because Ms. Turks wrongly blamed Plaintiff for a misplaced PIV infiltrate performed by someone else.  She additionally accused him of falsifying records when he was merely correcting mis-charted information in a patient's record, which is allowed per CCMC's policy.

54.     Plaintiff could no longer tolerate the unequal, humiliating, deceitful and abusive behavior of Ms. Turks and other PICU staff at CCMC.

55.     On or about September 23, 2019, Plaintiff submitted his resignation letter.

56.     CCMC never accepted Plaintiff's resignation.

57.     On or about October 4, 2019, Ms. Turks informed Plaintiff that CCMC terminated his employment effective immediately.  Plaintiff requested Ms. Turks to send him confirmation of his termination in writing.  Neither Ms. Turks nor anyone else at CCMC provided Plaintiff with written confirmation of his termination.

58.     After Plaintiff's termination, CCMC failed to offer Mr. Owens temporary continuation of group health coverage that is required under The Consolidated Omnibus Budget

Reconciliation Act ("COBRA").

## VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT

59.     Plaintiff incorporates by reference the allegations set forth above as if the same were fully set forth herein.

60.     Defendant, Cook Children's Medical Center, intentionally engaged in unlawful employment practices involving Plaintiff because of his disabilities of scoliosis, speech impediment, and depression.

61.     Defendant, Cook Children's Medical Center, intentionally discriminated against Plaintiff in connection with the compensation, terms, conditions and privileges of employment in violation of 42 U.S.C. Section 12112. The effect of these practices has been to deprive Plaintiff of equal employment opportunities and otherwise adversely affect his status as an employee.

62.     At all material times, Plaintiff was able to perform the essential functions of his position with accommodation.  Plaintiff has a disability, has a record of a disability and is regarding as having a disability which substantially limits at least one major life activity. Plaintiff was discriminated against on the basis of his disability, record of a disability and perception of having a disability.

63.     Plaintiff alleges that Defendant, Cook Children's Medical Center, discriminated against Plaintiff on the basis of disability with malice or with reckless indifference to the protected rights of Plaintiff.

64.     Due to Defendant's violations of Title 42 U.S.C. Section 12101 et. seq, Plaintiff suffered damages for which Plaintiff herein sues.

## CONSTRUCTIVE DISCHARGE

65.     Plaintiff incorporates by reference the allegations set forth above as if the same

were fully set forth herein.

66.    Even though Cook Children's Medical Center did not accept his resignation and terminated him on October 4, 2019, Cook Children's Medical Center made the working conditions so intolerable that Plaintiff felt compelled to resign his position.  A reasonable person in the same position would have also felt compelled to resign.  Plaintiff suffered damages for which Plaintiff herein sues.

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS BY COOK CHILDREN'S MEDICAL CENTER

67.    Plaintiff incorporates by reference the allegations set forth above as if the same were fully set forth herein.

68.    Defendant Cook Children's Medical Center, intentionally or recklessly allowed Ms. Turks and other staff members to discriminate against and harass Plaintiff to the point he no longer wanted to work as a nurse.  Defendant's conduct was extreme and outrageous and proximately caused Plaintiff severe emotional distress.  Plaintiff suffered damages for which Plaintiff herein sues.

### NEGLIGENT HIRING, SUPERVISION AND TRAINING BY COOK CHILDREN'S MEDICAL CENTER

69.    Plaintiff incorporates by reference the allegations set forth above as if the same were fully set forth herein.

70.    Plaintiff alleges that the conduct of Defendant Cook Children's Medical Center, constituted negligent hiring, supervision and training.  Plaintiff alleges that Defendant Cook Children's Medical Center, did not properly screen, evaluate, investigate, or take any reasonable steps to determine whether Jessica Turks was unfit, incompetent, or a danger to third parties. Defendant Cook Children's Medical Center, knew or should have known that Jessica Turks was

unfit and could foresee that Jessica Turks would come in contact with Plaintiff, creating a risk of danger to Plaintiff. Defendant Cook Children's Medical Center's failure to exercise reasonable care in the hiring, supervision and training of Jessica Turks was the proximate cause of damages to Plaintiff for which Plaintiff hereby sues.

### VIOLATION OF COBRA

71.    Plaintiff incorporates by reference the allegations set forth above as if the same were fully set forth herein.

72.    Defendant failed to offer Plaintiff temporary continuation of group health coverage that is required under the Consolidated Omnibus Budget Reconciliation Act ("COBRA"). Plaintiff suffered damages for which Plaintiff herein sues.

### DAMAGES

73.    Plaintiff sustained the following damages as a result of the actions and/or omissions of Defendant described hereinabove:

    a.    All reasonable and necessary Attorney's fees incurred by or on behalf of Plaintiff;

    b.    Back pay from the date that Plaintiff was denied equal pay for equal work and interest on the back pay in an amount to compensate Plaintiff as the Court deems equitable and just;

    c.    All reasonable and necessary costs incurred in pursuit of this suit;

    d.    Emotional pain;

    e.    Expert fees as the Court deems appropriate;

    f.    Front pay in an amount the Court deems equitable and just to make Plaintiff whole;

g.     Inconvenience;

h.     Loss of enjoyment of life;

i.     Mental anguish in the past;

j.     Mental anguish in the future;

k.     Reasonable medical care and expenses in the past.  These expenses were incurred by Jacob W. Owens and such charges are reasonable and were usual and customary charges for such services in Tarrant County, Texas;

l.     Reasonable and necessary medical care and expenses which will in all reasonable probability be incurred in the future;

m.     Loss of earnings in the past;

n.     Loss of earning capacity which will, in all probability, be incurred in the future;

o.     Loss of benefits; and

p.     Injury to reputation.

## EXEMPLARY DAMAGES

19.     Plaintiff would further show that the acts and omissions of Defendant complained of herein were committed with malice or reckless indifference to the protected rights of the Plaintiff.  In order to punish said Defendant for engaging in unlawful business practices and to deter such actions and/or omissions in the future, Plaintiff also seeks recovery from Defendant for exemplary damages.

## SPECIFIC RELIEF

20.     Plaintiff seeks the following specific relief which arises out of the actions and/or omissions of Defendant described hereinabove:

a.   Prohibit by injunction the Defendant from engaging in unlawful employment practices; and

b.   Retract the false allegations reported to the Texas Board or Nursing.

## PRAYER

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff, Jacob W. Owens, respectfully prays that the Defendant be cited to appear and answer herein, and that upon a final hearing of the cause, judgment be entered for the Plaintiff against Defendant for damages in an amount within the jurisdictional limits of the Court; exemplary damages, together with interest as allowed by law; costs of court; and such other and further relief to which the Plaintiff may be entitled at law or in equity.

Respectfully submitted,

By: */s/ Joseph G. Shouse*
 Joseph G. Shouse
 Texas Bar No. 24056318
 E-Mail:  joe@972calljoe.com
 1452 Hughes Road
 Suite 200
 Grapevine, Texas 76051
 Tel. (972) 225-5563
 Fax. (972) 474-6909
 Attorney for Plaintiff
 Jacob W. Owens

## PLAINTIFF HEREBY DEMANDS TRIAL BY JURY

## PLAINTIFF'S REQUEST FOR DISCOVERY

### Request for Disclosure

Defendant is hereby requested to disclose, within fifty (50) days of service of this petition and incorporated request, the information or material described in Rule 194.2(a)-(i) of the Texas Rules of Civil Procedure, to the counsel of record for Plaintiff.

### Interrogatories

Defendant is hereby requested to answer, within fifty (50) days of service of this petition and incorporated request, the interrogatories attached as "Exhibit A," separately, fully, in writing, and under oath, pursuant to Rule 197 of the Texas Rules of Civil Procedure, to the counsel of record for Plaintiff.

### Request for Production

Defendant is hereby requested to answer, within fifty (50) days of service of this petition and incorporated request, the documents and tangible items in the list attached hereto as "Exhibit B," pursuant to Rule 196 of the Texas Rules of Civil Procedure, to the counsel of record for Plaintiff.

### Request for Admissions

Defendant is hereby requested to answer, within fifty (50) days of service of this petition and incorporated request, that propositions of fact and/or law attached hereto as "Exhibit C," pursuant to Rule 198 of the Texas Rules of Civil Procedure, to the counsel of record for Plaintiff.

### RULE 193.7 NOTICE

Pursuant to Rule 193.7 of the Texas Rules of Civil Procedure, Plaintiff hereby gives notice that any and all documents produced by either Plaintiff or Defendant may be used at any pretrial proceeding or at trial.

**EXHIBIT " A"**
**PLAINTIFF'S INTERROGATORIES TO**
**DEFENDANT COOK CHILDREN'S MEDICAL CENTER**

### DEFINITIONS AND INSTRUCTIONS

1.      As used herein, the terms "you" and "your" shall refer to Cook Children's Medical Center, Cook Children's Medical Center's attorneys, agents, and all other natural persons or business or legal entities acting or purporting to act for or on behalf of Cook Children's Medical Center, whether authorized to do so or not.

2.      As used herein, the term "documents" shall mean all writings of every kind, source and authorship, both originals and all nonidentical copies thereof, in your possession, custody, or control, or known by you to exist, irrespective of whether the writing is one intended for or transmitted internally by you, or intended for or transmitted to any other person or entity, including without limitation any government agency, department, administrative, or private entity or person.   The term shall include handwritten, typewritten, printed, photocopied, photographic, or recorded matter.   It shall include communications in words, symbols, pictures, sound recordings, films, tapes, and information stored in, or accessible through, computer or other information storage or retrieval systems, together with the codes and/or programming instructions and other materials necessary to understand and use such systems.   For purposes of illustration and not limitation, the term shall include: affidavits; agendas; agreements; analyses; announcements; bills, statements, and other records of obligations and expenditures; books; brochures; bulletins; calendars; canceled checks, vouchers, receipts and other records of payments; charts or drawings; check registers; checkbooks; circulars; collateral files and contents; contracts; corporate bylaws; corporate charters; correspondence; credit files and contents; deeds of trust; deposit slips; diaries; drafts; files; guaranty agreements; instructions; invoices; ledgers, journals, balance sheets, profit and loss statements, and other sources of financial data; letters; logs, notes, or memoranda of telephonic or face-to-face conversations; manuals; memoranda of all kinds, to and from any persons, agencies, or entities; minutes; minute books; notes; notices; parts lists; papers; press releases; printed matter (including books, articles, speeches, and newspaper clippings); purchase orders; records; records of administrative, technical, and financial actions taken or recommended; reports; safety deposit boxes and contents and records of entry; schedules; security agreements; specifications; statements of bank accounts; statements; interviews; stock transfer ledgers; technical and engineering reports, evaluations, advice, recommendations, commentaries, conclusions, studies, test plans, manuals, procedures, data, reports, results, and conclusions; summaries, notes, and other records and recordings of any conferences, meetings, visits, statements, interviews or telephone conversations; telegrams; teletypes and other communications sent or received; transcripts of testimony; UCC instruments; work papers; and all other writings, the contents of which relate to, discuss, consider, or otherwise refer to the subject matter of the particular discovery requested.

3.      In accordance with Tex. R. Civ. P. Rule 192.7, a document is deemed to be in your possession, custody or control if you either have physical possession of the item or have a right to possession of the item that is equal or superior to the person who has physical control of the item.

4.      "Person":  The term "person" shall include individuals, associations, partnerships, corporations, and any other type of entity or institution whether formed for business purposes or any other purposes.

5.      "Identify" or "Identification":

(a)      When used in reference to a person, "identify" or "identification" means to state his or her full name, present or last known residence address, present or last known business address and telephone number.

(b)      When used in reference to a public or private corporation, governmental entity, partnership or association, "identify" or "identification" means to state its full name, present or last known business address or operating address, the name of its Chief Executive Officer and telephone number.

(c)      When used in reference to a document, "identify" or "identification" shall include statement of the following:

(i)      the title, heading, or caption, if any, of such document;

(ii)      the identifying number(s), letter(s), or combination thereof, if any; and the significance or meaning of such number(s), letter(s), or combination thereof, if necessary to an understanding of the document and evaluation of any claim of protection from discovery;

(iii)      the date appearing on such document; if no date appears thereon, the answer shall so state and shall give the date or approximate date on which such document was prepared;

(iv)      the number of pages and the general nature or description of such document (i.e., whether it is a letter, memorandum, minutes of a meeting, etc.), with sufficient particularity so as to enable such document to be precisely identified;

(v)      the name and capacity of the person who signed such document; if it was not signed, the answer shall so state and shall give the name of the person or persons who prepared it;

(vi)      the name and capacity of the person to whom such document was addressed and the name and capacity of such person, other than such addressee, to whom such document, or a copy thereof, was sent; and

(vii)      the physical location of the document and the name of its custodian or custodians.

6.    "Settlement": as used herein, means:

(a)    an oral or written, disclosed or undisclosed agreement, bargain, contract, settlement, partial settlement, limited settlement, arrangement, deal, understanding, loan arrangement, credit arrangement, contingent settlement, limitation on the amount of liability or judgment, or a promise by or between plaintiff and any defendant or between any defendant herein whereby plaintiff or defendant have in any way released, compromised, in whole or in part, directly or indirectly, or agreed to do so in the future, any of the matters in controversy in this lawsuit whether before, after or during trial or before or after any jury verdict is returned herein or a judgment is entered or rendered herein.

(b)    any resolution of the differences between the plaintiff and defendant by loan to the plaintiff or any other device which is repayable in whole or in part out of any judgment the plaintiff may recover against defendant.

(c)    The term "settlement" shall also include "Mary Carter Agreements" as that term is used under Texas Law.

7.    Unless a specific date or dates is set forth in any specific question herein, you are directed that each question shall be answered for the period of time up to and including the present date.

8.    "Concerning" and "refer or relate to" when used with respect to a given subject, means, in whole or in part, directly or indirectly, any document that constitutes, contains, evidences, identifies, refers to, relates to, deals with, comments on, connects with, responds to, shows, describes, analyzes, reflects or is in any way pertinent to that subject, including, without limitation, documents concerning the presentation or existence of other documents.

9.    "Mobile device" means any cellular telephone, satellite telephone, pager, personal digital assistant, handheld computer, electronic Rolodex, walkie-talkie, or any combination of these services.

## INTERROGATORIES

1.    Please state the full name, address, telephone number, date of birth, driver's license number, social security number, and occupation of all persons providing information in answering these interrogatories.

**ANSWER**:


2.    Please state the type of your business entity (i.e., partnership, corporation, etc.), and state the general nature of your business, the date of its inception, its full and complete name, and all assumed names that the business uses at the present and has used in the past.

**ANSWER**:

3.      Identify each and every occasion that a communication occurred between you (and any employee, representative or agent of you) and Plaintiff.  Include in your answer when the communication was made, the total verbatim communication (if that is not possible, then state the detailed substance of the communication), the date, time, and location the same occurred, and the identity of any employee or other person present at the time such communication was made.

**ANSWER**:

4.      State the names of all insurance companies who had primary or excess (umbrella) insurance coverage in effect on the date(s) of the incident(s) made the basis of the claims made against you herein and the policy number(s), amount(s) or limit(s) of coverage.

**ANSWER**:

5.      Describe any insurance agreement under which any insurance company or business may be liable to satisfy part or all of the judgment which may be entered in this action, or to indemnify or reimburse for payments made to satisfy the judgment, by stating the name of the person or entity insured, the name of the insurer, and the amount of any liability insurance coverage.

**ANSWER**:

6.      Identify all persons that were employed or contracted by you who worked directly with Jacob W. Owens during the incidents that were reported in his Corrective Action Forms by stating the name, address, telephone number, date of birth, driver's license number, social security number, and occupation, and describe the scope of authority for each such person.

**ANSWER**:

7.      Identify any and all other representations made by you (and any employee, representative or agent of you) to Plaintiff regarding his performance as a PICU nurse.  Include in your answer when the representation was made, the total verbatim representation (if that is not possible, then state the detailed substance of the representation), the date, time, and location the same occurred, and the identity of any employee or other person present at the time such representation was made.

**ANSWER:**

8.      Identify any and all policies, guidelines, rules, or procedures that support the accusations made in Mr. Owens' Corrective Action Forms.

**ANSWER:**

9.      Identify every person who provided information used in each Corrective Action Form concerning Jacob W. Owens.

**ANSWER:**

10.      If you are asserting affirmative defenses in this cause, generally describe the factual bases for each such affirmative defense.

**ANSWER:**

11.      Identify every person who is expected to be called to testify at trial, including your experts.

**ANSWER:**

12.      Identify every person who has impeachment or rebuttal evidence and describe the evidence each person has. If you have enough information to anticipate the use of impeachment or rebuttal evidence or witnesses, you must provide that information.

**ANSWER:**

13.      Identify each and every occasion that a communication occurred between you and any employee, representative or agent of you concerning Jacob W. Owens. Include in your answer when the communication was made, the total verbatim communication (if that is not possible, then state the detailed substance of the communication), the date, time, and location the same occurred, and the identity of any employee or other person present at the time such communication was made.

**ANSWER:**

14.      Identify who approved Plaintiff's orientation documentation allowing Plaintiff to

practice without another nurse's supervision.

**ANSWER**:


15.    Describe Plaintiff's erratic behavior(s) on May 30th and May 31st of 2019.

**ANSWER**:



## VERIFICATION

**STATE OF TEXAS**                    §
                                                        §
**COUNTY OF _____**            §


BEFORE    ME,    the    undersigned    authority,    personally    appeared

_____, who stated, upon oath, that the statements made in

the foregoing instrument titled, *"Exhibit A" Plaintiff's Interrogatories to Defendant Cook*

*Children's Medical Center* are within his/her personal knowledge and are true and correct.


_____

Name:


**SUBSCRIBED AND SWORN TO BEFORE ME** on _____, by

_____.


_____

Notary Public, State of Texas


REST OF PAGE INTENTIONALLY LEFT BLANK

## ⁕ EXHIBIT B⁕
## PLAINTIFFS' FIRST REQUEST FOR PRODUCTION
## TO DEFENDANT COOK CHILDREN'S MEDICAL CENTER

### DEFINITIONS AND INSTRUCTIONS

1.      As used herein, the terms "you" and "your" shall refer to Cook Children's Medical Center, Cook Children's Medical Center's attorneys, agents, and all other natural persons or business or legal entities acting or purporting to act for or on behalf of Cook Children's Medical Center, whether authorized to do so or not.

2.      As used herein, the term "documents" shall mean all writings of every kind, source and authorship, both originals and all nonidentical copies thereof, in your possession, custody, or control, or known by you to exist, irrespective of whether the writing is one intended for or transmitted internally by you, or intended for or transmitted to any other person or entity, including without limitation any government agency, department, administrative, or private entity or person. The term shall include handwritten, typewritten, printed, photocopied, photographic, or recorded matter. It shall include communications in words, symbols, pictures, sound recordings, films, tapes, and information stored in, or accessible through, computer or other information storage or retrieval systems, together with the codes and/or programming instructions and other materials necessary to understand and use such systems. For purposes of illustration and not limitation, the term shall include: affidavits; agendas; agreements; analyses; announcements; bills, statements, and other records of obligations and expenditures; books; brochures; bulletins; calendars; canceled checks, vouchers, receipts and other records of payments; charts or drawings; check registers; checkbooks; circulars; collateral files and contents; contracts; corporate bylaws; corporate charters; correspondence; credit files and contents; deeds of trust; deposit slips; diaries or drafts; files; guaranty agreements; instructions; invoices; ledgers, journals, balance sheets, profit and loss statements, and other sources of financial data; letters; logs, notes, or memoranda of telephonic or face-to-face conversations; manuals; memoranda of all kinds, to and from any persons, agencies, or entities; minutes; minute books; notes; notices; parts lists; papers; press releases; printed matter (including books, articles, speeches, and newspaper clippings); purchase orders; records; records of administrative, technical, and financial actions taken or recommended; reports; safety deposit boxes and contents and records of entry; schedules; security agreements; specifications; statements of bank accounts; statements or interviews; stock transfer ledgers; technical and engineering reports, evaluations, advice, recommendations, commentaries, conclusions, studies, test plans, manuals, procedures, data, reports, results, and conclusions; summaries, notes, and other records and recordings of any conferences, meetings, visits, statements, interviews or telephone conversations; telegrams; teletypes and other communications sent or received; transcripts of testimony; UCC instruments; work papers; and all other writings, the contents of which relate to, discuss, consider, or otherwise refer to the subject matter of the particular discovery requested.

3.      In accordance with Tex. R. Civ. P. Rule 192.7, a document is deemed to be in your possession, custody or control if you either have physical possession of the item or have a right to possession of the item that is equal or superior to the person who has physical control of the item.

4.      "Person" or "persons" means any natural persons, firms, partnerships, associations, joint ventures, corporations and any other form of business organization or arrangement, as well as governmental or quasi-governmental agencies. If other than a natural person, include all natural persons associated with such entity.

5.      Any and all data or information which is in electronic or magnetic form should be produced in a reasonable manner.

## USE OF DEFINITIONS

The use of any particular gender in the plural or singular number of the words defined under paragraph "1", "Definitions" is intended to include the appropriate gender or number as the text of any particular request for production of documents may require.

## TIME PERIOD

Unless specifically stated in a request for production of documents, all information herein requested is for the entire time period from January 1, 2019, through the date of production of documents requested herein.

## REQUEST FOR PRODUCTION

1.      Any and all documents which relate to any corrective action or disciplinary action involving Jacob W. Owens (including patients' charts and/or notes).

2.      A copy of Jacob W. Owens' employee file.

3.      A copy of Jessica Turk's employee file.

4.      Any and all documents relating to corrective actions or disciplinary actions taken against any PICU nurse in the last 5 years.

5.      Any and all documents (or other tangible evidence), including responsive items stored in electronic form that describe, refer to, support, reflect, memorialize, or substantiate any and all communication, oral or written, between you (and any of your agents, employees and/or representatives) and Plaintiff.  Responsive documents in electronic form should be produced as follows:  flash drive or CD ROM.

6.      All written reports of inspection, tests, writings, drawings, graphs, charts, recordings, investigation documentation, reports and/or memoranda or opinions of anyone

concerning the basis of this lawsuit.

7.    Any and all written information allegedly relied upon by you that you allege may have been false and/or inaccurate and that you allege may be a cause of the damages claimed by Plaintiff in this lawsuit.

8.    Any and all documents (or other tangible evidence) that describe, refer to, support, reflect, memorialize, or substantiate the negligence or other fault of Plaintiff or any other person for the damages claimed by Plaintiff in this lawsuit.

9.    Copies of any and all diaries, logs, calendars, or other notes kept in any form whatsoever concerning the incidents made the basis of this suit.

10.    A copy of any and all correspondence or other communications relating to the incidents or transactions made the basis of this suit.

11.    Any and all documents (or other tangible evidence), including responsive items stored in electronic form that describe, refer to, support, reflect, memorialize, or substantiate who was responsible and handled the narcotics that are referred to in the corrective actions taken against Jacob W. Owens.

12.    A copy of any and all correspondence or other communications relating to the incidents or transactions made the basis of this suit.

13.    A copy of Plaintiff's orientation documentation and approval.

14.    Copies of all your policies, procedures, guidelines, rules and regulations that must be followed by hospital employees and staff.

15.    All photographs, motion pictures, movies, films, or photographic material of any kind taken that relate to the allegations or defenses in this lawsuit.

16.    All written statements made by Plaintiff, you, or any of your representatives, agents, employees, or any witness in this lawsuit.

17.     All oral statements made by Plaintiff, you (or any of your representatives, agents, employees), or any witness in this lawsuit, which were either recorded or taped on an electronic device or recorder.

18.     Copies of any and all books, documents or other tangible things which may or may not be introduced at trial, but which may have a bearing on this lawsuit and may be used as demonstrative evidence at trial.

19.     Any and all reports of any experts retained by you for which you cannot positively aver you will not call as a witness at trial of this matter, and the reports of any expert whose opinions or impressions have been reviewed by any expert whom you may call as an expert witness at the trial, including factual observations, impressions, and opinions, and any and all photographs that accompany or are included in or referred to in said reports.

20.     A copy of the resume or curriculum vitae of each person you may call as an expert witness at the trial and each person whose opinions or impressions have been reviewed by any expert whom you may call as an expert witness at the trial.

21.     Any and all documents that have been furnished to persons whom you may call as expert witnesses at the trial of this case or to persons whose opinions or impressions have been reviewed by any expert whom you may call as an expert witness at the trial.

22.     Any and all documents prepared by each expert who you may call to testify at trial or who is not expected to be called to testify at trial but whose opinions or impressions have been reviewed by a testifying expert.

23.     A copy of any insurance agreement under which you were insured at any time during the incidents made the basis of this lawsuit, without regard to whether you claim or deny such agreement applies to such incidents.

24.     Any and all documents identified or referred to in your answers to Interrogatories not provided in response to the foregoing Requests.

REST OF PAGE INTENTIONALLY LEFT BLANK

## VERIFICATION

**STATE OF TEXAS**                                          §
                                                           §
**COUNTY OF** _____                                  §


BEFORE    ME,    the    undersigned    authority,    personally    appeared

_____, who stated, upon oath, that the statements made in the

foregoing instrument titled, *"Exhibit B" Plaintiff's First Request for Production to Cook*

*Children's Medical Center* are within his/her personal knowledge and are true and correct.

_____
Name:

**SUBSCRIBED AND SWORN TO BEFORE ME** on _____, by

_____.


_____
Notary Public, State of Texas


REST OF PAGE INTENTIONALLY LEFT BLANK

**EXHIBIT "C"**

**REQUESTS FOR ADMISSIONS**

**DEFINITIONS AND INSTRUCTIONS**

1.      As used herein, the terms "you" and "your" shall refer to Cook Children's Medical Center, Cook Children's Medical Center's attorneys, agents, and all other natural persons or business or legal entities acting or purporting to act for or on behalf of Cook Children's Medical Center, whether authorized to do so or not.

2.      "Person": The term "person" shall include individuals, associations, partnerships, corporations, and any other type of entity or institution whether formed for business purposes or any other purposes.

3.      "Settlement," as used herein, means:

    (a)      an oral or written, disclosed or undisclosed agreement, bargain, contract, settlement, partial settlement, limited settlement, arrangement, deal, understanding, loan arrangement, credit arrangement, contingent settlement, limitation on the amount of liability or judgment, or a promise by or between plaintiff and any defendant or between any defendant herein whereby plaintiff or defendant have in any way released or compromised, in whole or in part, directly or indirectly, or agreed to do so in the future, any of the matters in controversy in this lawsuit whether before, after or during trial or before or after any jury verdict is returned herein or a judgment is entered or rendered herein;

    (b)      any resolution of the differences between the plaintiff and defendant by loan to the plaintiff or any other device which is repayable in whole or in part out of any judgment the plaintiff may recover against defendant;

    (c)      "Mary Carter Agreements" as that term is used under Texas Law.

4.      Unless a specific date or dates is set forth in any specific question herein, you are directed that each question shall be answered for the period of time up to and including the present date.

ADMISSIONS

1.      Admit or deny that that Jacob W. Owens was terminated from his job as a PICU registered nurse at Cook Children's Medical Center.

**ADMIT OR DENY: _____**

2.      Admit or deny that any and all drug tests performed on Jacob W. Owens were

negative for any illicit drug.

**ADMIT OR DENY: _____**

3.       Admit or deny that Jessica Turk followed all of your policies and procedures in her handling of Jacob W. Owens' corrective actions and improvement plans.

**ADMIT OR DENY: _____**

4.       Admit or deny that you were aware that Jessica Turk terminated Jacob W. Owens over the phone on October 4, 2019.

**ADMIT OR DENY: _____**

5.       Admit or deny that you are aware of PICU nurses, other than Plaintiff, violating hospital policies concerning the handling and administering of controlled substances.

**ADMIT OR DENY: _____**

6.       Admit or deny that it is not against hospital policy for a PICU nurse to obtain an ordered blood sample by venipuncture.

**ADMIT OR DENY: _____**

7.       Admit or deny that Plaintiff was eligible for a leave of absence covered by insurance to account for his missed shifts and possible missed shifts in the future for his back injuries.

**ADMIT OR DENY: _____**

8.       Admit or deny that Plaintiff's request for a leave of absence for his back injuries was denied.

**ADMIT OR DENY: _____**

9.       Admit or deny that Plaintiff's scoliosis is considered a disability under the Americans with Disabilities Act.

**ADMIT OR DENY:** _____

    10.      Admit or deny that Plaintiff was denied reasonable accommodations for his scoliosis related disability.

**ADMIT OR DENY:** _____

    11.      Admit or deny that Plaintiff's speech impediment is considered a disability under the Americans with Disabilities Act.

**ADMIT OR DENY:** _____

    12.      Admit or deny that Plaintiff was denied reasonable accommodations for his speech impediment disability.

**ADMIT OR DENY:** _____

    13.      Admit or deny that Plaintiff's depression is considered a disability under the Americans with Disabilities Act.

**ADMIT OR DENY:** _____

    14.      Admit or deny that Plaintiff was denied accommodations for his depression disability.

**ADMIT OR DENY:** _____

    15.      Admit or deny that Plaintiff was approved to be taken off orientation status.

**ADMIT OR DENY:** _____

    16.      Admit or deny that Ms. Turk failed to properly assess Mr. Owens' injuries by refusing to review his medical documentation and for failing to have Occupational Health assess his ability to perform his job duties prior to him returning to work after injuring his back.

**ADMIT OR DENY:** _____

17.     Admit or deny that Plaintiff should not have been reprimanded by Ms. Turks for unexcused absences due to his back injuries.

**ADMIT OR DENY:** _____

18.     Admit or deny that the two-personnel verification process for high-risk medications under Section A(6)(b) of PS 589 was fulfilled when Dr. Galvez and Mr. Owens were the two authorized personnel in the room and they followed the verification process prior to administering the medication concerning one of Plaintiff's corrective actions.

**ADMIT OR DENY:** _____

19.     Admit or deny that you failed to pay Mr. Owens for the time he missed during his suspension despite the negative result of the drug test per

**ADMIT OR DENY:** _____

20.     Admit or deny that Ms. Turk and other CCMC management failed to administer corrective action in a fair and consistent manner amongst the PICU nurses.

**ADMIT OR DENY:** _____

21.     Admit or deny that you did not accept Plaintiff's resignation.

**ADMIT OR DENY:** _____

22.     Admit or deny that you failed to offer Plaintiff temporary continuation of group health coverage that is required under the Consolidated Omnibus Budget Reconciliation Act ("COBRA").

**ADMIT OR DENY:** _____

21.     Admit or deny that PICU nurses are allowed to correct notes that are accidentally mis-charted in a patient's records.

**ADMIT OR DENY:** _____

## VERIFICATION

**STATE OF TEXAS**                          §
                                            §
**COUNTY OF _____**                       §

BEFORE   ME,   the   undersigned   authority,   personally   appeared _____, who stated, upon oath, that the statements made in the foregoing instrument titled, *"Exhibit C" Requests for Admissions* are within his/her personal knowledge and are true and correct.

_____
Name:

**SUBSCRIBED AND SWORN TO BEFORE ME** on _____, by _____.

_____
Notary Public, State of Texas

REST OF PAGE INTENTIONALLY LEFT BLANK

FILED
TARRANT COUNTY
4/22/2020 3:59 PM
THOMAS A. WILDER
DISTRICT CLERK

141-316185-20

Telephone  (972) 225-5563
Facsimile  (972) 474-6909
Email      joe@972calljoe.com

# JOSEPH SHOUSE, PLLC
### ATTORNEY AT LAW

1452 Hughes Rd.
Suite 200
Grapevine, TX 76051

April 22, 2020

**VIA ELECTRONIC FILING MANAGER**
Tarrant County District Clerk

Re:    Request for service documents to be emailed for Cause No. 141-316185-20, *Jacob W. Owens v. Cook Children's Medical Center*.

Dear Clerk:

Please email the service documents for Cause No. 141-316185-20, *Jacob W. Owens v. Cook Children's Medical Center* to me at your earliest convenience.  My email address is joe@972calljoe.com.

Feel free to contact me if any additional information is necessary for my request.

Yours very truly,

Joseph G. Shouse

cc: client



**EXHIBIT
A-3**

141-316185-20

FILED
TARRANT COUNTY
5/26/2020 10:22 AM
THOMAS A. WILDER
DISTRICT CLERK

### CAUSE NO. 141-316185-20

| | | |
|---|---|---|
| JACOB W. OWENS, | § | IN THE DISTRICT COURT |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | 141ST JUDICIAL DISTRICT |
| | § | |
| COOK CHILDREN'S MEDICAL | § | |
| CENTER, | § | |
| | § | |
| **Defendant.** | § | TARRANT COUNTY, TEXAS |

## DEFENDANT'S GENERAL DENIAL AND AFFIRMATIVE DEFENSES

TO THE HONORABLE JUDGE OF SAID COURT:

Defendant Cook Children's Medical Center ("Defendant") files its General Denial and Affirmative Defenses and would respectfully show the Court as follows:

### I.
### GENERAL DENIAL

Pursuant to Rule 92 of the Texas Rules of Civil Procedure, Defendant hereby enters a general denial, denying each and every, all and singular, the allegations, charges and claims contained in Plaintiff's Original Petition, and demands strict proof thereof.

### II.
### AFFIRMATIVE DEFENSES

1.  Plaintiff's Petition fails to state a claim for relief.

2.  Plaintiff's state common law claims are preempted, in whole or in part, by the American With Disabilities Act and the Texas Commission on Human Rights Act.

3.  Plaintiff's state law claims are barred in whole or in party by the worker's compensation exclusivity provisions of the Texas Labor Code §§ 408.001 *et seq*.



EXHIBIT
A-4

DEFENDANT'S GENERAL DENIAL AND AFFIRMATIVE DEFENSES - PAGE 1

3142918_1.DOC

4.      Plaintiff's claims fail in whole or in part because Plaintiff failed to fully exhaust the available administrative remedies prior to filing suit and/or Plaintiff's claims exceed the scope of the administrative charge of discrimination.

5.      Plaintiff's claims or damages are barred in whole or in part by Plaintiff's failure to mitigate Plaintiff's damages.

6.      Plaintiff's damages are limited or capped by the applicable damages caps and limitations set forth in the Texas Labor Code, Texas Civil Practices and Remedies Code, Americans with Disabilities Act, and other applicable, state or local law, or the due process requirements of the federal and state constitutions.

7.      Plaintiff's claims for punitive or exemplary damages are barred in whole or in part by the statutory and constitutional limitations and caps on the recovery of such damages.

PREMISES CONSIDERED, Defendant prays that Plaintiff take nothing by his suit, and that Defendant be allowed to go hence with its costs without delay, and for such other and further relief, both at law and in equity, to which Defendant may show itself justly entitled.  Defendant prays for general relief.

Respectfully submitted,


_____*/s/ Russell D. Cawyer*_____
Russell D. Cawyer
State Bar No. 00793482
Hannah Penley Parks
State Bar No. 24090323
**KELLY HART & HALLMAN LLP**
201 Main Street, Suite 2500
Fort Worth, Texas 76102
Telephone: (817) 332-2500
Facsimile: (817) 335-2820
russell.cawyer@kellyhart.com
hannah.parks@kellyhart.com

**ATTORNEYS FOR DEFENDANT**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was e-served on the all counsel of record through EFile.TxCourts.gov this 26th day of May, 2020:

Joseph G. Shouse
JOSEPH SHOUSE, PLLC
1452 Hughes Road, Suite 200
Grapevine, Texas 76051
joe@972calljoe.com

_/s/ Russell D. Cawyer_
Russell D. Cawyer